**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAURIE VOLPE,<br><br>               Plaintiff,<br><br>v.<br><br>DICERNA PHARMACEUTICALS, INC., DOUGLAS M. FAMBROUGH, III, J. KEVIN BUCHI, STEPHEN DOBERSTEIN, MARTIN FREED, PATRICK M. GRAY, STEPHEN J. HOFFMAN, ADAM M. KOPPEL, MARC KOZIN, and CYNTHIA SMITH,<br><br>               Defendants. | Case No. _____<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Laurie Volpe ("Plaintiff"), by her undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Dicerna Pharmaceuticals, Inc. ("Dicerna" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Dicerna, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer by NNUS New

1

Research, Inc. ("Purchaser"), a wholly-owned indirect subsidiary of Novo Nordisk A/S ("Novo"), to purchase all outstanding shares of Dicerna ("Tender Offer").

2. On November 17, 2021, Dicerna entered into an Agreement and Plan of Merger with Novo and Purchaser ("Merger Agreement"), whereby Purchaser will acquire all outstanding shares of the Company's common stock for $38.25 per share in cash (the "Offer Price").

3. On November 24, 2021, in order to convince Dicerna's public common shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") with the SEC.

4. In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) Dicerna's financial projections; (ii) the respective financial analyses performed by the Company's financial advisors, Centerview Partners, LLC ("Centerview") and SVB Leerink LLC ("SVB") in connection with the Tender Offer; (iii) potential conflicts of interest for SVB regarding the Tender Offer; and (iv) employment retention following consummation of the Tender Offer.

5. The Tender Offer is scheduled to expire at 12:00 a.m. Eastern Time, on the date twenty business days after November 24, 2021 – commencement of the Tender Offer ("Expiration Time"). Therefore, it is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the Expiration Time, so they can properly decide whether to tender their shares.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9. Plaintiff seeks to enjoin Defendants from closing on the Tender Offer, or taking any steps

to consummate it unless and until the material information discussed below is disclosed to Dicerna's public common stockholders sufficiently in advance of the Expiration Time or, in the event the Tender Offer is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). In addition, Dicerna's legal counsel in connection with the Tender Offer,

3

Skadden, Arps, Slate, Meagher & Flom LLP, is located in this District at One Manhattan West, New York, NY 10001.  Last, Centerview is located in this District at 31 West 52nd Street, New York, NY 10019.

## PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Dicerna common stock.

11. Defendant Dicerna is a public company incorporated under the laws of Delaware with principal executive offices located at 75 Hayden Avenue, Lexington, MA 02421. As mentioned above, the Company's common stock trades on the Nasdaq under the ticker symbol "DRNA."

12. Individual Defendant Douglas M. Fambrough, III, Ph.D is, and has been at all relevant times, a director of the Company, its President and Chief Executive Officer.

13. Individual J. Kevin Buchi is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14. Individual Defendant Stephen Doberstein, Ph.D. is, and has been at all relevant times, a director of the Company.

15. Individual Defendant Martin Freed, M.D. is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Patrick M. Gray is, and has been at all relevant times, a director of the Company.

17. Individual Defendant Stephen J. Hoffman, M.D., Ph.D is, and has been at all relevant times, a director of the Company.

18. Individual Defendant Adam M. Koppel, M.D., Ph.D. is, and has been at all relevant

4

times, a director of the Company.

19. Individual Defendant Marc Kozin is, and has been at all relevant times, a director of the Company.

20. Individual Defendant Cynthia Smith is, and has been at all relevant times, a director of the Company.

21. The Individual Defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Dicerna, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I. Background of Dicerna, Novo, and the Tender Offer

22. Dicerna is a biopharmaceutical company that focuses on the discovery, development, and commercializing of ribonucleic acid interference (RNAi)-based pharmaceuticals. The Company develops pharmaceuticals using its GalXC RNAi platform for the treatment of diseases involving the liver, including rare, cardiometabolic, viral, and chronic liver diseases; complement-mediated diseases; and neurodegenerative diseases and pain. Its principal development programs include nedosiran for the treatment of primary hyperoxaluria; RG6346 for the treatment of chronic hepatitis B virus infection; belcesiran for the treatment of deficiency-associated liver disease; and DCR-AUD for the treatment of alcohol use disorder. Dicerna has strategic collaborations with Novo, F. Hoffmann-La Roche Ltd and Hoffmann-La Roche Inc., Eli Lilly and Company, Alnylam Pharmaceuticals, Inc., Alexion Pharmaceuticals, Inc., and Boehringer Ingelheim International GmbH.

23. Novo is a healthcare company that engages in the research, development, manufacture, and marketing of pharmaceutical products worldwide. It operates in two segments,

Diabetes and Obesity care, and Biopharm. The Diabetes and Obesity care segment provides products in the areas of insulins, GLP-1 and related delivery systems, oral antidiabetic products, obesity, and other chronic diseases. The Biopharmaceuticals segment offers products in the areas of haemophilia, growth disorders, and hormone replacement therapy. Novo has collaboration agreements with Lund University to develop treatment for Parkinson's diseases; and bluebird bio, Inc. to develop genome editing treatments for children and adult patients. Novo also has a research collaboration with Lumen Bioscience, Inc. to explore strategies for delivering oral biologics for cardiometabolic disease.

24. According to Dicerna's November 18, 2021, press release announcing the Tender Offer:

**Novo Nordisk to Acquire Dicerna**

*– Acquisition to Accelerate and Expand Novo Nordisk Development of RNAi Therapeutics Using Dicerna's Proprietary GalXC™ Technology Platform –*

**LEXINGTON, Mass., Nov. 18 2021 –** Dicerna Pharmaceuticals, Inc. (Nasdaq: DRNA) today announced that it has entered into a definitive agreement with Novo Nordisk under which Novo Nordisk will acquire Dicerna, a biopharmaceutical company focused on the development of investigational ribonucleic acid interference (RNAi) therapeutics, for $38.25 per share in cash, which represents a total equity value of $3.3 billion and a premium of 80% to Dicerna's closing price on November 17, 2021. The transaction was unanimously approved by the Dicerna Board of Directors and the Board of Directors of Novo Nordisk.

Novo Nordisk and Dicerna have been parties to a research collaboration since 2019 to discover and develop RNAi therapies using Dicerna's proprietary GalXC™ RNAi platform technology. The collaboration between Novo Nordisk and Dicerna encompassed the exploration of more than 30 liver cell targets with the potential to deliver multiple clinical candidates for disorders including chronic liver disease, non-alcoholic steatohepatitis (NASH), type 2 diabetes, obesity and rare diseases. Novo Nordisk expects to initiate clinical development of the first investigational RNAi therapeutic to emerge from this collaboration in 2022.

Dicerna's RNAi technology platform enables access to intracellular disease targets across hepatic and extrahepatic cell and tissue types, complementing Novo Nordisk's existing technology platforms. This acquisition supports Novo Nordisk's strategy of developing and applying a broad range of technology platforms across all Novo Nordisk therapeutic areas.

"The acquisition of Dicerna accelerates Novo Nordisk's research within RNAi and expands the usage of the RNAi technology," said Marcus Schindler, Executive Vice President and Chief Scientific Officer of Novo Nordisk. "We build on our successful collaboration and by combining Dicerna's state-of-the-art RNAi drug engine and intracellular delivery with our deep capabilities in disease biology understanding and tissue targeting through peptides and proteins we have the potential to expand our pipeline and deliver life-changing precision medicines for people living with

chronic diseases such as diabetes, obesity, cardiovascular disease and NASH, as well as rare diseases like endocrine disorders and bleeding disorders."

"Since the start of our collaboration two years ago, the Dicerna and Novo Nordisk teams have established a strong rapport built on a foundation of mutual respect for one another's capabilities, culture and expertise," said Douglas Fambrough, Ph.D., Founder, President and Chief Executive Officer of Dicerna. "The combination of Dicerna's expertise in RNAi and oligonucleotide therapeutics and highly skilled employees with Novo Nordisk's industry leadership in developing and commercializing medicines to treat serious chronic diseases, has the potential to significantly accelerate and expand our mission to deliver GalXC RNAi therapies for the benefit of patients and all our stakeholders."

Under the terms of the agreement, Novo Nordisk, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Dicerna common stock at a price of $38.25 per share in cash. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Dicerna's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Novo Nordisk's acquisition subsidiary will be merged into Dicerna, and any remaining shares of common stock of Dicerna will be cancelled and converted into the right to receive the same $38.25 per share price payable in the tender offer. The transaction is expected to close in the fourth quarter of 2021.

Novo Nordisk is represented by Evercore as exclusive financial advisor and Davis Polk & Wardwell LLP as legal advisor. For Dicerna, Centerview Partners LLC is acting as lead financial advisor, SVB Leerink is acting as financial advisor, and Skadden, Arps, Slate, Meagher & Flom LLP and Goodwin Procter LLP are acting as legal advisors.

(Emphasis in original).

## II.  The Recommendation Statement Omits Material Information

25.  Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC. Yet, the Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. Thus, the Recommendation Statement should be supplemented, so the Company's stockholders can make an informed decision on whether to tender their shares prior to the Expiration Time.

26.  First, the Recommendation Statement discloses that prior to creating the Management Projections in October of 2021, SVB used certain management forecasts to perform preliminary financial analyses on Novo's interest in a strategic transaction with Dicerna ("Original Projections"), yet the Original Projections are not disclosed because, according to Defendants,

there are no material differences between the Original Projections and the Management Projections. However, the test of materiality is not based on Defendants subjective beliefs but on a reasonable shareholder's right to have all material information. Therefore, Dicerna's shareholders are entitled to know the Management Projections and its adjustments. Further, the Recommendation Statement provides that the Original Projections did not account for the Company's broader RNAi platforms, but it is unclear whether the Management Projections account for it. Such information must be disclosed to the Company's shareholders, so they can properly consider the Management Projections disclosed.

27. Unlike poker where a player must conceal her unexposed cards, the object of a recommendation statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

28. Second, the Recommendation Statement omits material information regarding Centerview and SVB's respective financial analyses performed in connection with the Tender Offer.

Centerview's Financial Analyses

29. Concerning the *Discounted Cash Flow Analysis*, the following information was omitted from the Recommendation Statement: (i) the terminal value of Dicerna; (ii) the

assumptions underlying selection of the perpetuity growth rate of 1% and 4%, respectively ; and (iii) the inputs underlying the Capital Asset Pricing Model used by Centerview to derive the discount rates ranging from 10.0% to 12.0%.

30. These key inputs are material to Dicerna's shareholders, and their omission renders the summary of Centerview's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added). Without the aforementioned, Dicerna's shareholders cannot evaluate for themselves the reliability of Centerview's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or were the result of an unreasonable judgment by Centerview, and make an informed decision regarding whether to tender their shares.

31. Finally, for Centerview's *Analyst Price Target Analysis*, the Recommendation Statement omits the source of each analyst report observed, and the individual Dicerna price targets observed by each of those analysts.

## SVB's Financial Analyses

32. In connection with SVB's *Discounted Cash Flow Analysis* of Dicerna, the Recommendation Statements fails to provide the following: (i) the terminal value calculated for the Company; (ii) the assumptions underlying selection of the perpetuity growth rates of 4% and 1%, respectively; and (iii) the inputs underlying the capital asset pricing model used to derive the discount rates of 9.0% to 11.0%. Indeed, this omitted information is material for all the reasons discussed above in connection with Centerview's *Discounted Cash Flow Analysis*.

33. Third, the Recommendation Statement provides that SVB rendered certain commercial banking services to the Company in the past two years, yet it does not disclose the amount received or the specifics of those commercial banking services rendered.

34. Fourth, the Recommendation Statement states that on November 13, 2021, discussions took place between Novo and the Company regarding "integration and employee retention," but the details of the discussions are omitted. Indeed, if certain directors or members of senior management of Dicerna were in discussions to continue their employment with Novo following consummation of the Tender Offer, then this is a potential conflict of interest that shareholders need to be made aware of.

35. In sum, omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information concerning the Tender Offer prior to the Expiration Time, Plaintiff will be unable to make an informed decision concerning whether to

tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I
### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

38. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39. The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the Offer Price and the intrinsic value of the Company.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. The omissions, and incomplete and misleading statements in the Recommendation Statement are material in that reasonable stockholders would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

42. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

43. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

**COUNT II**
**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act**
**and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

46.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

48.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

49.     The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

50. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which renders the Recommendation Statement false and/or misleading. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

51. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

### COUNT III
**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Dicerna within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Dicerna, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Tender Offer. They were thus directly involved in preparing this document.

56.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 3, 2021          **MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*